1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIE BRIDGES,

11              Plaintiff,              No. CIV S-09-0940 TLN DAD P

12       vs.

13   SUZAN L. HUBBARD, et al.,

14              Defendants.            ORDER AND

15   _____/   FINDINGS AND RECOMMENDATIONS

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendants Crandall, Davey, Ivicevich, Johnson, Marquez, Marsh,

19   Marshall, and Wong pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff has

20   filed an opposition to the motion.

21                              **BACKGROUND**

22              Plaintiff is proceeding on his third amended complaint against defendants

23   Crandall, Davey, Ivicevich, Johnson, Marquez, Marsh, Marshall, and Wong.  In relevant part,

24   plaintiff alleges in that complaint as follows.  On June 17, 2003, white inmates attacked black

25   inmates on the C-upper yard at High Desert State Prison ("HDSP").  Prison officials punished

26   black inmates on C-yard by placing them on an extensive lock-down.  On January 24, 2005,

1

1    defendant Davey reported that he received information from a confidential source indicating that

2    black inmates were targeting several staff members for assault.  An investigation concluded that

3    plaintiff along with eight other black inmates conspired to murder numerous peace officers.

4    Prison officials subsequently issued plaintiff a prison rules violation report ("RVR"), but for

5    various reasons prison officials twice re-issued and re-heard that RVR.  Ultimately, defendant

6    Ivicevich found plaintiff guilty of the charge and referred him to the Institution Classification

7    Committee for assessment of a Security Housing Unit ("SHU") term.  Plaintiff has since served a

8    48-month SHU term as a result of his disciplinary conviction.  Plaintiff claims that in connection

9    with these events defendants retaliated against him, engaged in a conspiracy to deprive him of his

10   constitutional rights, and subjected him to cruel and unusual punishment in violation of the

11   Eighth Amendment.  (Third Am. Compl. at 5-16.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

13          Summary judgment is appropriate when the moving party "shows that there is no

14   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

15   Fed. R. Civ. P. 56(a).

16          Under summary judgment practice, the moving party "initially bears the burden of

17   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

18   627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

19   The moving party may accomplish this by "citing to particular parts of materials in the record,

20   including depositions, documents, electronically store information, affidavits or declarations,

21   stipulations (including those made for purposes of the motion only), admission, interrogatory

22   answers, or other materials" or by showing that such materials "do not establish the absence or

23   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

24   support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

25   of proof at trial, "the moving party need only prove that there is an absence of evidence to

26   support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at

325.).  See also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure

of proof concerning an essential element of the nonmoving party's case necessarily renders all

other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

long as whatever is before the district court demonstrates that the standard for entry of summary

judgment, . . ., is satisfied."  Id. at 323.

    If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing

party must demonstrate that the fact in contention is material, i.e., a fact that might affect the

outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987).

    In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

/////

3

1  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

2  genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

3       "In evaluating the evidence to determine whether there is a genuine issue of fact,"

4  the court draws "all reasonable inferences supported by the evidence in favor of the non-moving

5  party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

6  the opposing party's obligation to produce a factual predicate from which the inference may be

7  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

8  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

9  party "must do more than simply show that there is some metaphysical doubt as to the material

10  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

11  nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

12  omitted).

13                    **OTHER APPLICABLE LEGAL STANDARDS**

14  I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

15       The Civil Rights Act under which this action was filed provides as follows:

16       Every person who, under color of [state law] . . . subjects, or causes
         to be subjected, any citizen of the United States . . . to the
17       deprivation of any rights, privileges, or immunities secured by the
         Constitution . . . shall be liable to the party injured in an action at
18       law, suit in equity, or other proper proceeding for redress.

19  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

20  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

21  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

22  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

23  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

24  omits to perform an act which he is legally required to do that causes the deprivation of which

25  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

26  /////

                                    4

1   Moreover, supervisory personnel are generally not liable under § 1983 for the

2   actions of their employees under a theory of respondeat superior and, therefore, when a named

3   defendant holds a supervisorial position, the causal link between him and the claimed

4   constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

5   (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

6   allegations concerning the involvement of official personnel in civil rights violations are not

7   sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

8   II.  Conspiracy

9   To state a conspiracy claim under § 1983, plaintiff must allege that defendants

10  reached an agreement or a meeting of the minds to violate plaintiff's constitutional rights and

11  took some concerted action in furtherance thereof.  See Franklin v. Fox, 312 F.3d 423, 441 (9th

12  Cir. 2002); Gilbrook v. City of Westminster, 177 F.3d 839, 856-67 (9th Cir. 1999); Woodrum v.

13  Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989); Fonda v. Gray, 707 F.2d 435, 438 (9th

14  Cir. 1983).  Although each of the defendants does not need to know the exact details of the plan,

15  each defendant must share a common objective of the conspiracy.  See Franklin, 312 F.3d at 441;

16  Fonda, 707 F.2d at 438.

17  III.  Retaliation

18  Under the First Amendment, prisoners have a constitutional right to file prison

19  grievances and pursue civil rights litigation in the courts.  See Rhodes v. Robinson, 408 F.3d

20  559, 567 (9th Cir. 2005).  Prison officials may not retaliate against prisoners for doing so.  See id.

21  at 568.  In this regard, the Ninth Circuit has explained:

22          Within the prison context, a viable claim of First Amendment
            retaliation entails five basic elements:  (1) An assertion that a state
23          actor took some adverse action against an inmate (2) because of (3)
            that prisoner's protected conduct, and that such action (4) chilled
24          the inmate's exercise of his First Amendment rights, and (5) the
            action did not reasonably advance a legitimate correctional goal.
25

26  Id. at 567-68.  See also Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003).

5

IV.  The Fourteenth Amendment and Due Process Protections for Prisoners

Prisoners retain their rights under the Fourteenth Amendment Due Process Clause, but they are subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Id.  However, prisoners are entitled to the following procedures at disciplinary hearings where they may lose good-time credits or be placed in solitary confinement:  (1) advanced written notice of the claimed violation at least twenty-four hours before the hearing, (2) a written statement of fact findings as to the evidence relied upon and reasons for the actions taken, and (3) a right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals.  Id. at 563-66; see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997); McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir. 1986).  If a prisoner is illiterate or the issues are so complex so as to make it unlikely that the inmate will be able to collect and present the evidence necessary, the prisoner may be able to seek help from a fellow inmate or help from correctional staff.  Id. at 570.  "Findings that result in the loss of liberty will satisfy due process if there is some evidence which supports the decisions of the disciplinary board."  Zimmerlee v. Keeney, 831 F.2d 183 (9th Cir. 1987).  See also Edwards v. Balisok, 520 U.S. 1584, 1589 (1997); Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1999); Hines v. Gomez, 108 F.3d at 268.

V.  The Eighth Amendment and Cruel and Unusual Punishment

The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  However, neither accident nor negligence constitutes cruel and unusual punishment, because "[i]t is obduracy and wantonness, not inadvertence or error in good faith,

1   that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."

2   Whitley, 475 U.S. at 319.  What is needed to show unnecessary and wanton infliction of pain

3   "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian,

4   503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320).  Plaintiff must allege facts showing that

5   objectively he suffered a sufficiently serious deprivation and that subjectively each defendant had

6   a culpable state of mind in allowing or causing the plaintiff's deprivation to occur.  Wilson v.

7   Seiter, 501 U.S. 294, 298-99 (1991).

8   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

9            Defendants' statement of undisputed facts is supported by citations to copies of

10  the rules violation report ("RVR") issued to plaintiff, copies of crime/incident reports, and copies

11  of plaintiff's inmate appeals and prison officials responses thereto.  It is also supported by

12  citations to copies of confidential memoranda from plaintiff's central prison file.[1]

13           The evidence submitted by defendants on summary judgment establishes the

14  following.  At all relevant times, plaintiff was a state prisoner at HDSP.  At all relevant times,

15  defendants Officer Crandall, Lieutenant Davey, Lieutenant Ivicevich, Captain Johnson, Officer

16  Marsh, Lieutenant Marshall, and Chief Disciplinary Officer Wong worked at HDSP.  Defendant

17  Special Agent Marquez worked at the CDCR's Law Enforcement Investigation Unit ("LEIU") in

18  Sacramento.  (Defs.' SUDF 1-2, Third Am. Compl.)

19           On January 24, 2005, defendant Davey received information from a confidential

20  informant that black inmates were targeting several staff members at HDSP.  The informant also

21  provided defendant Davey with a stabbing weapon made of flat, grey metal, and measuring 2 ½

22  inches in length and 3/4 inch wide.  The end of the weapon had been sharpened to a point, but it

23

24        [1] Defendants have requested that the court review confidential memoranda from
     plaintiff's central file, referenced as Exhibit B in support of defendants' motion for summary
25   judgment, in camera and file the memoranda under seal.  Good cause appearing, the court will
     grant defendants' request and order that Exhibit B be maintained under seal until further ordered
26   by the court.

1  did not have a handle.  Defendant Davey turned the weapon over to the Investigative Service

2  Unit for processing.  (Defs.' SUDF 3, Ex. A.)

3         The confidential informant provided detailed information about the planned

4  assault on staff by black inmates.  The informant indicated that the black inmates were upset

5  because they believed that prison staff had set them up for assault by white inmates.  After staff

6  received this information, they began a mass search of C-Facility, Units 7 and 8 at HDSP.

7  During the search, they discovered several inmate-manufactured weapons.  That same day, prison

8  officials contacted LEIU to complete a threat assessment at HDSP regarding the alleged

9  conspiracy by Crip and Blood associates to assault or kill correctional officers at the institution.

10  Defendant Marquez was assigned to assess the purported threat.  (Defs.' SUDF 4-8, Exs. A & B.)

11         On February 1, 2005, defendant Marquez began meeting with several inmates and

12  staff members.  Initially, defendant Marquez met with the confidential informant who had

13  provided information to staff.  The informant provided the same information to defendant

14  Marquez and confirmed that plaintiff was part of the plot.  The informant also revealed that the

15  staff members targeted for assault were Captain Johnson, Lieutenant Davey, Sergeant St. Andre,

16  and Officers Ginder and Zills.  On February 11, 2005, defendant Marquez interviewed plaintiff.

17  Plaintiff refused to participate in an audio-taped interview.  Although plaintiff admitted to being

18  an influential member of the Bloods disruptible group, he denied any knowledge of an inmate

19  plan to assault staff.  (Defs.' SUDF 9-10, Ex. B.)

20         Based on these interviews that defendant Marquez conducted and a review of

21  documentary evidence, defendant Marquez determined that there was "in fact a threat to the

22  aforementioned targeted staff by Black inmates identified as having disruptive group gang

23  affiliations."  In addition, at least one of the conspirators had begun compiling weapons to use

24  against the staff members.  Defendant Marquez recommended that staff initiate disciplinary

25  reports against the suspects, including plaintiff, and any other inmate deemed to have been a part

26  of a plan or conspiracy to assault staff.  Defendant Johnson received additional reliable

1    information that black inmates blamed staff for playing a part in the riot and that plaintiff was a

2    part of the plot to kill a staff member.  (Defs.' SUDF 11-12, Ex. B.)

3              On April 4, 2005, staff completed the investigation into the conspiracy to murder

4    peace officers on Facility C at HDSP.  Staff had gathered information that provided evidence

5    showing that inmates were conspiring to murder peace officers.  According to the information,

6    the assault would take place after staff completed the controlled release of black inmates from the

7    lock-down.  Inmates were planning to lure staff into vulnerable areas of the prison, such as dining

8    halls, the education rooms, and the canteen.  Inmates would stage a mock fight, and when

9    responding staff arrived the conspirators would attack pre-determined officers.  They planned to

10   stab officers in the face, neck, and groin to circumvent their protective vests.  Again, plaintiff

11   was one of the inmates implicated in the conspiracy.  (Defs.' SUDF 13, Ex. A.)

12             The prison disciplinary charge of conspiracy requires that:  (1) two or more

13   individuals be involved; (2) the proof of planning; and (3) an overt act.  Plaintiff met these

14   conspiracy charge criteria.  The plan to murder staff had been "clearly formulated describing how

15   the battery was to begin and that these assaults were to be completed in a way to kill staff."

16   (Defs.' SUDF 14, Ex. A.)

17             On April 4, 2005, prison officials issued plaintiff an RVR for conspiracy to

18   murder a peace officer and later found him guilty of the charge.  On June 7, 2005, defendant

19   Wong ordered the disciplinary violation re-issued and re-heard because, although plaintiff had

20   received all of the necessary paperwork prior to the disciplinary hearing, there was no issuance

21   date given.  After plaintiff was found guilty of the prison rules violation a second time, on

22   September 7, 2005, defendant Wong ordered the prison disciplinary violation re-issued and re-

23   heard again because

24             [t]he original documents were re-issued to Bridges, however,
             Bridges was not afforded all rights and procedural safeguards as
25             directed by CCR 3313(c)(4)(A) as the Senior Hearing Officer
             utilized the same Investigative Employee and Staff Assistant
26             information used in the original hearing.  Additionally, there is no

9

1    indication in the hearing that Bridges agreed to use the same IE
     report and SA information from the original hearing.
2

3  (Defs.' SUDF 15-19, Ex. A.)

4          On September 22, 2005, Officer Feliciano was assigned as plaintiff's investigative

5  employee.  When plaintiff objected, defendant Crandall was assigned as plaintiff's investigative

6  employee.  On November 16, 2005, Officer Quezada was assigned as plaintiff's staff assistant.

7  As plaintiff's investigative employee, defendant Crandall interviewed plaintiff and asked if he

8  had any questions to add to the original report.  Plaintiff's response was, "make sure that the last

9  fool (indicating Officer Feliciano) who was assigned as the original IE is at the CDC-115

10 hearing."  Plaintiff also stated that he wanted defendant Crandall at the disciplinary hearing.

11 (Defs.' SUDF 20-22, Ex. A.)

12         On December 29, 2005, defendant Ivicevich conducted the disciplinary hearing on

13 the RVR issued to plaintiff.  Plaintiff had given defendant Crandall additional questions to ask,

14 but then told defendant Crandall to ask only three of those questions.  When defendant Crandall

15 explained this at the hearing, defendant Ivicevich suspended the hearing.  On January 1, 2006,

16 plaintiff was afforded an opportunity to attend the disciplinary hearing again and did so.  At the

17 beginning of that hearing defendant Ivicevich asked plaintiff if he needed any additional

18 investigative employee information, and plaintiff stated that he did not.  Defendant Ivicevich told

19 plaintiff that if there were any outstanding issues he would suspend the hearing and seek further

20 information.  Plaintiff stated again that he was satisfied with the investigative report.  (Defs.'

21 SUDF 23-24, Ex. A.)

22         Plaintiff pled "not guilty" to the prison disciplinary charge, and provided a written

23 statement setting forth a list of objections to various stages of the disciplinary violation process.

24 Plaintiff was provided an opportunity to call witnesses, and plaintiff submitted a list of questions

25 to ask them.  Defendant Ivicevich stipulated to much of the testimony, denied the request to hear

26 some testimony as irrelevant, and had some of the requested witnesses testify at the hearing.

1 During the disciplinary hearing, plaintiff stated that he did not want several of the witnesses to

2 appear.  (Defs.' SUDF 25, Ex. A.)

3          Defendant Ivicevich considered all of the evidence, including written

4 documentation and witness testimony as well as confidential documents, the memorandum

5 issued by defendant Marquez implicating plaintiff in the conspiracy, crime/incident reports, and

6 written information submitted by plaintiff.  Based on a preponderance of the evidence, defendant

7 Ivicevich concluded that plaintiff met the three components of the conspiracy charge.   Defendant

8 Ivicevich found that there was evidence of planning and agreement by plaintiff, and there was an

9 overt act because the conspirators were acquiring weapons.  Defendant Ivicevich also found that

10 "a conspiracy was contrived, [Plaintiff] along with the other inmates . . . conspired and agreed to

11 Murder Peace Officers.  The conspiracy entailed a detailed plan, in which the attack on peace

12 officers would continue until staff were assaulted with the intent to murder."  Plaintiff was found

13 guilty of the disciplinary charges but did not incur a credit loss because of failure to meet time

14 constraints.  (Defs.' SUDF 26, Ex. A.)

15          On January 26, 2006, plaintiff filed an inmate appeal claiming defendant Ivicevich

16 violated his due process rights.  Plaintiff requested dismissal of the disciplinary violation and that

17 any reference to the incident be stricken from his records.  He also requested that prison officials

18 restore any time and credit loss.  Prison officials bypassed the inmate appeal at the informal and

19 first formal levels of review.  On March 30, 2006, Chief Deputy Warden Sisto granted plaintiff's

20 appeal  in part at the second level of review.  (Defs.' SUDF 27-28, Ex. A.)

### ANALYSIS

22          In the pending motion for summary judgment, defense counsel argues that:  (1)

23 plaintiff's claims against defendants Davey, Johnson, and Marquez are barred by the statute of

24 limitations; (2) plaintiff has failed to allege sufficient facts to support a conspiracy claim; (3)

25 plaintiff has failed to establish that defendant Davey retaliated against him; (4) plaintiff's due

26 process claim fails because he received all the process he was due, and prison officials based

1  their finding that plaintiff was guilty of the disciplinary charge on some evidence.  Alternatively,

2  defense counsel argues that the defendants are entitled to qualified immunity.  The court will

3  address each of these arguments in turn.

4  I.  Statute of Limitations

5          Defense counsel argues that plaintiff's claims against defendants Davey, Johnson,

6  and Marquez are barred by the applicable statute of limitations because plaintiff had until March

7  2009 at the latest to file this civil action but did not file his complaint until April 6, 2009.  (Defs.'

8  Mem. of P. & A. at 5-6.)  The court finds this argument unpersuasive.

9          Defense counsel is correct that plaintiff had four years from the date his claims

10  accrued to file his civil rights action.  See Lukovsky v. City and County of S.F., 535 F.3d 1044,

11  1048-49 (9th Cir. 2008); Jones v. Blanas, 393 F.3d 918, 927-28 (9th Cir. 2004); see also Cal.

12  Civ. Code § 352.1.  However, as plaintiff argues in his opposition, "the applicable statute of

13  limitations must be tolled while a prisoner completes the mandatory exhaustion process."  Brown

14  v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005).

15          Here, defense counsel has not taken into account the five months that plaintiff

16  pursued his inmate appeals concerning the allegations in this case.  Plaintiff commenced the

17  inmate appeal process on January 26, 2006.  (Defs.' SUDF 27-28 & Ex. A.)  Plaintiff concluded

18  the process when he received the director's level of review decision on or about July 13, 2006.

19  (Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. Ex. A.)  If the five months of the

20  statute of limitations for the time plaintiff pursued his inmate appeals is tolled as required, then

21  plaintiff timely filed this action even under defendants' calculation.  Accordingly, defendants'

22  motion for summary judgment based on the statute of limitations should be denied.

23  II.  Plaintiff's Conspiracy Claim

24          Defense counsel argues that plaintiff has failed to identify any facts or evidence to

25  support a conspiracy claim against defendants.  (Defs.' Mem. of P. & A. at 12-13.)  The court

26  agrees.  In his third amended complaint, plaintiff claims that the defendants engaged in a civil

conspiracy to deprive him of his Fourteenth Amendment rights and maintains that, as a direct result of their conspiracy, he did not receive due process at his disciplinary hearing and was subjected to a 48-month SHU term.  (Third Am. Compl. at 14-15.)

Here, plaintiff's conspiracy claim is entirely speculative.  Although he has alleged that the defendants engaged in a conspiracy, plaintiff has not produced any evidence to show or even suggest that the defendants reached any sort of agreement or had a meeting of the minds to violate his constitutional rights at his disciplinary hearing or otherwise.  See Franklin, 312 F.3d at 441; Woodrum, 866 F.2d at 1126 (affirming district court's dismissal under Rule 12(b)(6) where plaintiff provided only conclusory allegations of conspiracy); William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 668 F.2d 1014, 1055 (9th Cir. 1981) (defendants must have "reached 'a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'"); Perkins v. Kemalyan, No. CV 09-7439, 2010 WL 6416247 at *5 (C.D. Aug. 6, 2010) ("Our jurisprudence requires more than labels of a conspiracy; it requires factual content."); Williams v. Foote, No. CV 08-2838 CJC (JTL), 2009 WL 1520029 at *13 (C.D. Cal. May 28, 2009) ("Although plaintiff claims that defendant Brochu 'conspired' with defendant Foote in the 'falsified investigation' and 'co[rrobor]ated the confidential information forcing a wrongful conviction,' and that defendants issued the RVR charging him with attempted murder of a peace officer solely based on confidential information they deemed reliable, plaintiff fails to allege specific facts of an agreement or meeting of the minds to violate plaintiff's constitutional rights.").

At most, plaintiff argues in his opposition to the pending motion for summary judgment that defendant Davey told him during his interrogation "If any shit starts on the lower yard we'll get you, any way we can, we'll get you."  (Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. at 15.)  Plaintiff contends that defendants subsequently accused him of the conspiracy and convicted him of the fabricated charge.  (Id.)  However, defendant Davey's alleged statement and the ensuing events are far too attenuated to show that each of the

1   defendants shared a common objective in any unlawful agreement against plaintiff.  Nor has

2   plaintiff offered any factual support or circumstantial evidence from which this court could infer

3   that each defendant had knowledge of or participated in any unlawful agreement against plaintiff.

4   As observed above, the court should enter summary judgment after adequate time for discovery

5   and upon motion against a party who fails to make a showing sufficient to establish the existence

6   of an element essential to that party's case, and on which that party will bear the burden of proof

7   at trial.  See Celotex Corp., 477 U.S. at 322.  Under the circumstances of this case, plaintiff has

8   failed to establish or offer any evidence from which this court could infer that defendants reached

9   any agreement to violate his constitutional rights.  Accordingly, the defendants' motion for

10  summary judgment in their favor on plaintiff's conspiracy claim should be granted.

11  III.  Plaintiff's Retaliation Claim

12          Defense counsel argues that plaintiff has failed to establish that defendant Davey

13  retaliated against plaintiff for engaging in any "protected conduct."  (Defs.' Mem. of P. & A. at

14  13-14.)  The court finds this argument unpersuasive.

15          In his third amended complaint, plaintiff alleges that defendant Davey summoned

16  him to the program office for an interrogation, but when plaintiff refused to answer the defendant

17  Davey's questions he threatened to transfer plaintiff and did, in fact, later transfer him to the C-

18  yard where hate crimes against black inmates took place.  According to plaintiff, defendant

19  Davey also had plaintiff placed in ad-seg and added plaintiff's name to a list to deny him

20  participation in a program designed to return inmates to regular programming, including outdoor

21  exercise.  (Third Am. Compl. (Doc. No. 35) at 14.)

22          Defense counsel cites no authority for the proposition that plaintiff's refusal to

23  answer defendant Davey's questions during an investigation does not constitute "protected

24  conduct."  In prisoner civil rights cases, the "protected conduct" involved in a retaliation claim

25  often arises from a prisoner filing complaints or administrative grievances at the prison or

26  pursuing civil rights litigation in court.  See, e.g., Rhodes, 408 F.3d 559.  However, the Supreme

14

1   Court has long recognized that "the Government may not retaliate for exercising First

2   Amendment speech rights or certain others of constitutional rank." Wilkie v. Robbins, 551 U.S.

3   537, 555-56 (2007) (citing Lefkowitz v. Turley, 414 U.S. 70 (1973) (Fifth Amendment privilege

4   against self-incrimination)).  In this case, the court finds that plaintiff was engaged in "protected

5   conduct" for purposes of a retaliation claim when he exercised both his First Amendment right

6   not to speak in response to defendant Davey's questions and his Fifth Amendment right against

7   self-incrimination.  See Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 796-98

8   (1988) ("the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the

9   decision of both what to say and what *not* to say."); United States v. Bodwell, 66 F.3d 1000,

10  1001 (9th Cir. 1995) ("The Fifth Amendment 'can be asserted in any proceeding, civil or

11  criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any

12  disclosures which the witness reasonably believes could be used in a criminal prosecution or

13  could lead to other evidence that might be so used.'") (quoting Kastigar v. United States, 406

14  U.S. 441 (1972)).

15          Defense counsel also argues that by the time plaintiff was placed in administrative

16  segregation, prison officials had already implicated him in a conspiracy to murder peace officers.

17  In this regard, counsel contends that any alleged adverse action taken against plaintiff served the

18  legitimate penological purpose of protecting staff.  Once more, the court finds this argument

19  unpersuasive.  To be sure, preserving institutional order, discipline, and security are legitimate

20  penological interests that, if they provide the motivation for an official act taken, will defeat a

21  retaliation claim.  See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo v. Dawson,

22  778 F.2d 527, 532 (9th Cir. 1985).  However, as plaintiff argues in his opposition, "prison

23  officials may not defeat a retaliation claim on summary judgment simply by articulating a general

24  justification for a neutral process, when there is a genuine issue of material fact as to whether the

25  action was taken in retaliation for the exercise of a constitutional right." Bruce, 351 F.3d at

26  1289-90.

1      Here, if defendant Davey took the alleged adverse actions against plaintiff as "a

2   cover or a ruse" to retaliate against him for his refusal to answer questions during defendant

3   Davey's investigation, the defendant cannot now assert that his actions served legitimate

4   correctional goals.  See Bruce, 351 F.3d at 1289 ("But, if, in fact, the defendants used the gang

5   validation procedure as a cover or a ruse to silence and punish Bruce because he filed grievances,

6   they cannot assert that Bruce's validation served a valid penological purpose, even though he

7   may have *arguably* ended up where he belonged.") (citing Rizzo, 778 F.2d at 532).

8      Finally, the court observes that plaintiff's evidence satisfies the remaining prongs

9   of a retaliation claim sufficiently to defeat summary judgment.  As to the adverse action prong,

10   defendant Davey's alleged threat to transfer plaintiff followed by his actually transferring

11   plaintiff to the C-yard where attacks against black inmates took place, satisfies the adverse action

12   requirement.  See Brodheim v. Cry, 584 F.3d 1262 (9th Cir. 2009).  Likewise, defendant Davey's

13   placing of plaintiff in ad-seg and adding plaintiff's name to a list to deny him participation in a

14   program designed to return inmates to regular programming, also satisfy the adverse action

15   requirement.  As to causation, plaintiff has offered evidence in the form of threats by defendant

16   Davey and suspect timing to show that defendant Davey was substantially motivated to act by or

17   because of plaintiff's engagement in protected conduct.  See Pratt v. Rowland, 65 F.3d 802, 807

18   (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory

19   intent.").  As noted above, during his interrogation defendant Davey allegedly told him "If any

20   shit starts on the lower yard we'll get you, any way we can, we'll get you."  (Pl.'s Decl. (Doc. No.

21   119 at 46) at 2.)  In his verified complaint plaintiff states that defendant Davey also purportedly

22   threatened to move plaintiff to the upper C-yard if he did not participate in the investigation, and

23   when plaintiff refused to answer his questions the defendant "followed through" on that threat

24   and moved plaintiff.  (Third Am. Compl. (Doc. No. 35) at 6 & 13.)

25      This evidence is by no means conclusive of retaliatory motive.  However, viewing

26   the facts in the light most favorable to plaintiff, the statements allegedly made by defendant

1   Davey combined with the timing of events are sufficient to raise a triable issue of fact regarding

2   defendant Davey's motives.  See Bruce, 351 F.3d at 1289 (statements and suspect timing raised

3   triable issue of fact regarding whether the defendants' motive behind plaintiff's gang validation

4   was retaliatory).  Lastly, as to the chilling effect on plaintiff's exercise of his constitutional rights,

5   the Ninth Circuit has explained that the proper analysis of such a claim prohibits the focusing on

6   whether a plaintiff was actually chilled in the exercise of his constitutional rights.  See Brodheim,

7   584 F.3d 1271.  Rather, an objective standard governs the chilling inquiry.  Id.  Here, the court

8   cannot say as a matter of law that a reasonable person would not have been chilled in the exercise

9   of his constitutional rights by defendant Davey's alleged threats and conduct directed at plaintiff.

10          In short, the undersigned finds that plaintiff has submitted sufficient evidence

11  establishing a legitimate dispute as to a genuine issue of material fact with respect to his

12  retaliation claim against defendant davey.  Accordingly, defendants' motion for summary

13  judgment on plaintiff's retaliation claim against defendant Davey should be denied.[2]

14  IV.  Plaintiff's Fourteenth Amendment Due Process Claim

15          Defense counsel next argues that plaintiff's Fourteenth Amendment due process

16  claim fails because plaintiff received all the process to which he was due in connection with his

17  disciplinary hearing and prison officials based their guilty finding on "some evidence" as

18  required.  (Defs.' Mem. of P. & A. (Doc. No. 91) at 7-12.)  However, in his third amended

19  complaint, plaintiff has not asserted any due process claim.  Specifically, plaintiff expressly

20

21          [2]  In the pending motion for summary judgment, defense counsel argues that the
    defendants are entitled to qualified immunity.  However, counsel's argument is conclusory and
22  appears to be directed solely at a due process claim that counsel believed plaintiff was asserting.
    (Defs.' Mem. of P. & A.  (Doc. No. 91) at 14-15.)  In any event, even if counsel intended to
23  argue that defendant Davey is entitled to qualified immunity with respect to plaintiff's retaliation
    claim, for the reasons discussed above the facts alleged in the verified complaint taken in the
24  light most favorable to the plaintiff demonstrate that defendant Davey's conduct violated
    plaintiff's rights under the First Amendment.  Moreover, the state of the law when the alleged
25  constitutional violations took place would have given defendant Davey fair warning that he could
    not retaliate against plaintiff for engaging in protected activity.  As early as 1995, "the
26  prohibition against retaliatory punishment [was] clearly established law in the Ninth Circuit for
    qualified immunity purposes."  See Pratt, 65 F.3d at 806.

1   states in his complaint that his first cause of action is for retaliation, his second cause of action is

2   for civil conspiracy, and his third cause of action is a claim that he was subjected to cruel and

3   unusual punishment.  (Third Am. Compl. (Doc. No. 35) at 14-16.)  In his opposition to

4   defendants' motion for summary judgment, plaintiff also makes clear that the "causes of action"

5   in this civil rights case are "whether the defendants retaliated and/or conspired against Bridges

6   and/or violated his Eighth Amendment rights."  (Pl.'s Mem. of P & A. in Opp'n to Defs.' SUDF

7   at 2 (Doc. No. 119 at 26).)  In this regard, plaintiff contends that "defendants' undisputed facts

8   and evidence submitted on summary judgment – in total – have no relevance and are not material

9   to the assertions and causes of action in this civil rights case."  (Id.)  Plaintiff emphasizes that

10  "whether Bridges was, or was not, part of any conspiracy of which prison officials eventually

11  found him guilty of is not material, nor determinative, of the matters before this Court."  (Id.)

12  This court has likewise recognized plaintiff's claims against defendants as ones for retaliation,

13  civil conspiracy, and cruel and unusual punishment.  (See Order Filed Mar. 26, 2013 (Doc. No.

14  101) at 2.)

15         Accordingly, defendants' motion for summary judgment on plaintiff's due process

16  claims should be denied as unnecessary.

17  V.  Plaintiff's Eighth Amendment Claim

18         Defense counsel does not address plaintiff's Eighth Amendment claim in the

19  pending motion for summary judgment.  However, the court will do so sua sponte.  In his third

20  amended complaint, plaintiff claims that defendants subjected him to cruel and unusual

21  punishment because, as a result of their conspiracy, he was required to serve a 48-month SHU

22  term under harsh conditions at Corcoran State Prison.  (Third Am. Compl. (Doc. No. 35) at 16.)

23         The court finds that plaintiff's allegations do not state a cognizable claim under

24  the Eighth Amendment.  See 28 U.S.C. § 1915(e)(2)(B)(ii).  As an initial matter, it is now clear

25  that plaintiff is complaining about his conditions of confinement at Corcoran State Prison.  None

26  of the defendants were employed at Corcoran State Prison nor were they responsible for the

1   conditions or policies in place at that prison.  Moreover, plaintiff has not even alleged that the

2   defendants who worked at HDSP knew of and disregarded an excessive risk of harm to plaintiff's

3   health and safety at Corcoran State Prison.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

4   Finally, even if plaintiff could somehow link the defendants to the conditions of his confinement

5   at Corcoran State Prison, this court must give prison officials "wide-ranging deference in the

6   adoption and execution of policies and practices that in their judgment are needed to preserve

7   internal order and discipline and to maintain institutional security."  Anderson v. County of Kern,

8   45 F.3d 1310, 1316 (9th Cir. 1995).  It is well established that "administrative segregation . . . is

9   within the terms of confinement ordinarily contemplated by a sentence."  Id. at 1316.  Such

10  conditions, including confinement in a cell for most of the day, do not violate the Eighth

11  Amendment.  Id.; see also Perkins v. Crum, No. 11-16903, 2012 WL 3301023 at *1 (9th Cir.

12  Aug. 8, 2012) (district court properly dismissed Eighth Amendment claim regarding conditions

13  in SHU); Pina v. Scavetta, No. 10-16749, 2012 WL 210883 at *1 (9th Cir. 2012) (same).[3]

14          Because plaintiff's third amended complaint fails to state a cognizable claim

15  under the Eighth Amendment, that claim should be dismissed.  See Omar v. Sea-Land Service,

16  Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed.

17  R. Civ. P. 12(b)(6).")[4]  Moreover, for the reasons set forth above, plaintiff cannot possibly win

18  relief on such a claim against the named HDSP defendants and therefore the granting of leave to

19  amend would be futile under these circumstances.  Reddy v. Litton Indus., Inc., 912 F.2d 291,

20  /////

21

22      [3]  Citations to these latter unpublished decisions is appropriate pursuant to Ninth Circuit
    Rule 36-3(b).

23

24      [4]  Plaintiff is thus put on notice by this recommendation of the court's intention to dismiss
    his Eighth Amendment claim.  If plaintiff wishes to argue against dismissal of that claim, he
    should present any such argument in his written objections to these findings and

25  recommendations for consideration by the assigned District Judge.  In this manner, plaintiff is
    being afforded an opportunity to oppose dismissal of his Eighth Amendment claim.  See Lee v.

26  City of Los Angeles, 250 F.3d 668, 683 n.7 (9th Cir. 2001).

1  296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed

2  amendment would be futile.")

### OTHER MATTERS

4  In a footnote in plaintiff's opposition to defendants' motion for summary

5  judgment, he "expressly seeks continuance of Defendants' summary judgment motion for the

6  purpose of obtaining discovery." (Pl.'s Mem. of P. & A. at 4 n.1.) The court has construed

7  plaintiff's request as a motion for relief under Federal Rule of Civil Procedure 56(d) (formerly

8  Rule 56(f)). Under Rule 56(d), "[t]he burden is on the party seeking to conduct additional

9  discovery to put forth sufficient facts to show that the evidence sought exists." Volk v. D.A.

10 Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987). See also Hancock v. Montgomery Ward

11 Long Term Disability Trust, 787 F.2d 1302, 1306 n.1 (9th Cir. 1986) (holding that the party

12 opposing summary judgment "has the burden under Rule 56[d] to show what facts [he] hopes to

13 discover to raise an issue of material fact"). Here, plaintiff has failed to make the requisite

14 showing that he is entitled to relief under Rule 56(d). Specifically, in his request, plaintiff does

15 not explain what specific facts he hopes to discover that could raise an issue of material fact in

16 this case. See Harris v. Duty Free Shoppers Ltd. P'ship, 940 F.2d 1272, 1276 (9th Cir. 1991);

17 Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1547 (9th Cir. 1991). Accordingly,

18 plaintiff's Rule 56(d) motion will be denied.

### CONCLUSION

20 IT IS HEREBY ORDERED that:

21 1. Defendants' request that confidential memoranda from plaintiff's central file,

22 referenced as Exhibit B in support of defendants' motion for summary judgment, be reviewed by

23 the court in camera and filed under seal (Doc. No. 93) is granted;

24 2. The Clerk of the Court is directed to file under seal the confidential

25 memoranda from plaintiff's central file, referenced as Exhibit B in support of defendants' motion

26 for summary judgment, until further ordered by the court; and

3.  Plaintiff's Rule 56(d) motion (Doc. No. 119) is denied.

IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment (Doc. No. 91) be granted in part and denied in part as follows:

      a.  Defendants' motion for summary judgment based on the statute of limitations be denied;

      b.  Defendants' motion for summary judgment on plaintiff's conspiracy claim be granted;

      c.  Defendants' motion for summary judgment on plaintiff's retaliation claim against defendant Davey be denied;

      d.  Defendants' motion for summary judgment on plaintiff's due process claims be denied as unnecessary; and

      e.  Defendants' motion for summary judgment based on the affirmative defense of qualified immunity be denied.

2.  Plaintiff's Eighth Amendment Cruel and Unusual Punishment claim be dismissed for failure to state a claim;

3.  Defendants Crandall, Ivicevich, Johnson, Marquez, Marsh, Marshall, and Wong be dismissed from this action; and

4.  This matter be referred back to the undersigned for further proceedings on plaintiff's retaliation claim against defendant Davey.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: July 16, 2013.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:9
    brid0940.57

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26